Good morning, Your Honors, and may it please the Court. My name is Kevin Little, and I represent the appellants in this case, Pamela Motley and the family members of Cindy Ray Goza. I'd like to reserve two minutes of my time for rebuttal, if the Court allows. Your Honors, many women in the United States live constantly in fear of violence from their partners or ex-partners. Domestic violence is the most prevalent, yet least enforced, crime. Many victim women are denied services that the Violence Against Women Act and analogous state laws provide for, and then a number of women, like Cindy Ray Goza and Pamela Motley, have their lives ended or irreparably damaged because the police disregarded them. Counsel, we understand the generalities here. What specific evidence can we look to in this case to support your theory? Your Honor, in an equal protection case, there are a number of ways in which discriminatory purpose and effect can be proved. That's what I'm asking. Give me some specific pieces of evidence that are in this record. Yes, Your Honor. One way in which you can prove bias is in the domestic violence context, misogynistic and hostile comments. This Court has said in the Balestrieri case that that constitutes strong evidence of an intent to discriminate against victims of domestic violence, and also women. In this case, we have a number of comments. We have comments where Officer Erton told Ms. Motley, after her husband had chased her into a and he was still in his vehicle, these guys only do this 1% of the time. We also have evidence that another Fresno police officer took an ambulance, called an ambulance back that was taking a rape victim to receive medical assistance and brought her back to the scene to interrogate her in front of her perpetrator, telling her she didn't look like a rape victim. We have evidence in this case, Your Honor, that an officer told a victim who had a domestic violence restraining order that most of us, we don't like dealing with these sorts of orders. We have evidence, Your Honor, that another domestic violence victim was told when she We have evidence, Your Honor, that Ms. Raygoza was told after she was choked in her own apartment by someone who broke through the door, she was told, she was criticized about her choices in men and said, if you continue to associate with these type of people, you're crying wolf and we're not going to help you. Do you have any? I have made quite a list from your record and I think it is very complete. The legal question I then have is, this is not an actual policy, I assume it's a de facto case that we're looking at, is that correct? Yes, indeed, Your Honor. And it would help me if you can talk about the standard we use because there obviously is conflicting evidence, which would suggest the denial on a, you know, summer judgment motion to dismiss anything short of a trial, if there's this conflicting evidence, including some of the evidence that's not contradicted. So how many, how much evidence do you think you need so that you don't fall into that trap of it being isolated evidence? Your Honor, I think domestic, in equal protection, obviously, the nature of the evidence that's needed to get the trial depends on the context. In Lee v. Maricopa County, which was a selective enforcement class of one case, this court required specific evidence that that individual, not only that there was an indication of bias toward him, but that other individuals were prosecuted. However, in a domestic violence context, neither this court nor other courts have ever required a group of women to do essentially an audit of a police department to prove that in all other respects that they follow their policies and that they don't act with similar disregard for all victims of crime. Indeed, as this court set forth in the, excuse me, in the Flores v. Morgan Hill case, evidence that a department has policies and professes to comply with those policies, we can hold them to that. They can certainly, if they choose to do that. I wish that notwithstanding what's in writing, there is a policy to discriminate against victims of domestic violence. Yes, Your Honor. Isn't that why we're here? And it is, and under the case law, including Macias, Cole, Navarro, Fajardo, all of the cases we've cited, you can prove that in the domestic violence context through anecdotal evidence. And we have tons of anecdotal evidence in this case, Your Honor. Do you need evidence that others are actually treated more favorably or differently? And do you have any of that evidence? Did you present any of that evidence to the district court that, for example, men who are victims of crime are treated differently or those who are victims of other types of similar crimes are treated differently? Yes, we did, Your Honor. As a matter of fact, in two of the domestic violence situations that were presented to the court, the Motley incident, the Pamela Motley incident on the 14th of March, it was shown that in the report, which is an exhibit on summary judgment, she was labeled as a suspect when a person came to her house after he found out that she was divorcing him, tried to pull off of her wedding ring, off her hand, yanked her off the porch, injured her, and simply because there was a faint bite mark on his hand, it was deemed to be mutual combat, and she was also labeled a suspect in that report. That is an incident that shows that there is more favorable treatment under like circumstances for men than for women. Similarly, Your Honor, in the case of Ms. Anderson, who was one of our declarants, she was arrested for making a phone call in violation of a restraining order to her former significant other who was similarly restrained. She was arrested, even though she had evidence, her bills, that she didn't actually make those calls. And on the other hand, he was not arrested under very similar circumstances because an arrest could have been using her phone. Did you offer any statistical evidence to the district court? We did not offer any statistical evidence, Your Honor. Do you need statistical evidence? I think that if domestic violence victims were required with all of the calls for service that police departments receive every year over a number of years, if we were required to essentially do a full department audit, that would be an insurmountable burden for any plaintiff in this type of case. And moreover— How do you think the jury instruction would read if we were to let this go to trial and you have really amassed quite a number of individuals with different situations? What would the jury be asked in your view? The jury would want to know, and I'm assuming that we would have claims against individuals and also a policy claim that we would be presenting to the jury. The jury would want to know, number one, in the various instances of alleged violations by the individuals, is there evidence as to each one of those incidents that they acted discriminatorily, either on the basis of domestic violence victim status or female status? And in the case of the agency itself, whether there is a de facto policy that the Fresno Police Department engages in lax enforcement and actually endorses the lax enforcement of the domestic violence laws and policies. What is the evidence that the police department endorses? Your Honor, there is a substantial amount of evidence. In the— A matter of policy that the department? Yes, Your Honor. In the person most knowledgeable to the deposition, who was a lieutenant with the Fresno Police Department, she testified that not a single Fresno police officer has ever been retrained, counseled, or disciplined based on a failure to enforce domestic violence laws or policies. However, we have a public statement from the police chief himself who says, well, there are many officers in our department who just don't get it when it comes to domestic violence. Well, perhaps, Your Honor, one of the reasons they don't get it is because they know that there's no consequence for their failure to get it. And furthermore, we have one evidence of policy is also statements of supervisors, decision makers, and the like. In this case, we have the deputy chief saying, in the aftermath of Ms. Regosa's tragic death, he told the officer who shot the perpetrator, albeit belated, that you shouldn't feel bad because with the men, given the men that she was dating, this was bound to happen. Our words to that effect. It's in the record. I think it's around page 1,050 or so. Is that also the case where they made an implication that she would be crying wolf if she were to report this? That's correct. That was, and that, I think, is very good evidence that the statements of the policy makers trickle down to the officers because we have two very similar statements. One made by a patrol officer, Officer Ingham, that you need to reconsider your choice than men, essentially. But then we have a similar, very similar statement by the deputy chief, the second in line at the entire police department, who even after this poor woman is shot and killed, says pretty much the same thing.  Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Robert Wargo, and I'll be here on behalf of Defendants City of Fresno and Officers Finley, Johnson, Little, Smith, Burton, and Ingham. I'd just briefly like to respond to Plaintiff's counsel's argument. The district court made it very clear that anecdotal evidence alone is insufficient to establish an equal protection claim. You either have to submit some sort of statistical study or specific evidence of how similarly situated people are treated differently. Here there was no such evidence. There is no evidence as to how the Fresno Police Department treats male victims of crime versus female victims of crime or how they treat victims of crime other than domestic violence versus victims of domestic violence. Here Plaintiff is expecting, trying to defeat the summary judgment just on inference, but that's not enough on a motion for summary judgment, and the district court made that clear. Well, there's more than inference here. I mean, in cases of discrimination, it's rare you find such categorical statements by the other side like we have here, like my officers don't get it, we aren't where we should be in sexual assault cases, and then officers making direct statements about, well, she's calling Wolf or discounting a woman because of the kind of people she hangs out with, these are not so much anecdotal as they're fairly concrete statements, are they not? Yes. I mean, it is these alleged statements are highly disputed, but nonetheless, Is there a dispute about what the police chief said? The police chief? The one that said that my officers don't get it? Is that in dispute? I don't – I think that was part of the evidence that was referred to in the brief that wasn't actually cited in the separate statement. There's quite a bit of evidence here that's being spoken about that was not actually in the separate statement that the district court would have reviewed. For example, out of all of the details of the other women, that was not gone into in detail in the Mosher summary judgment. I'm just trying to test you on your assertion that these are alleged facts and that they are in dispute. Do you dispute that that statement that Mr. Little told us about was made or not made? I was trying to find the exact reference to that specific statement. As I said, there were a few things that were referred to that actually were not put into evidence and may have been hearsay and subject to a hearsay objection. Well, it's ER-966 is where it's found. The question is, of course, we're here on de novo review, and we have the whole record in front of us to make a determination as to what we have. And my discomfort with this is because some things are disputed and some are not, is why it shouldn't just go to a trial. And the jury, you know, it doesn't matter if it's disputed. In fact, if it's disputed, it tips more toward not resolving it on summary judgment, doesn't it? Well, as we pointed out, these are just a few data points out of hundreds of thousands of crimes. I mean, we could just as easily go to the jury. There was no effort made to actually determine how other victims of crime are treated by the Fresno police officers. What should that kind of evidence have looked like? Well, there could have been, they could have asked for details on how victims or the perpetrators of domestic violence, how rates of arrest and prosecution versus other crimes. None of that is brought out. I mean, the point is they have to be treated differently than other victims of crime. There's no evidence of that. There's no evidence that there weren't given. Well, what if there's a, if the series of evidence is sufficient to suggest that there's, that they don't, they have a policy, but the de facto policy is not to follow the policy? Is that not a claim? We believe that the case law doesn't support that. That the cases are clear. There has to be at least some evidence of how other crime victims are treated. You can't just come in with, this is how I was treated, or this is how a few people were treated. There has to be some sort of policy, or at least an effect. Well, what about not following the policy? Well, there's no evidence of, there's, other than the few comments that were made, everything that the officers did here was discretionary as terms of arrest. I think the point, their main point is that they weren't arrested, but there's no mandatory, no officer breached any mandatory duty to arrest. No, but if they were treating individuals differently, and also if they were treating the victims in a way that violated the policy, that says something, doesn't it? I can't make it, no, but we're not here to make that decision. We're just looking at this fairly significant mass of evidence, of details. Isn't that really for a jury to decide, so you can make the argument you just made? Well, this was their time to put the evidence before the district court. And again, there was no evidence as to how others were treated. That's the crux of that. I have nothing further. Thank you. Thank you. Can you help us with this other evidence? The comparator evidence? Yes, Your Honor, and I would like to point out from the Flores versus Morgan Hill decision, which was an equal protection claim that also came before this court on summary judgment. I think we're interested in your direct response to opposing counsel's assertion that there was no evidence of comparators, no evidence of how others were better treated. Your Honor, there was. Tell us, where is it and what was it? The evidence that I mentioned, that in very similar situations, that Ms. Anderson and her significant other, one was arrested, the other wasn't. The incident of March 14th, Ms. Motley, her, she was deemed to be a perpetrator under circumstances where someone came to her house and attacked her, but at the same time, he was not deemed to be, he was not arrested, even though he, under the law, they're supposed to determine who is the primary aggressor. And moreover, Your Honor, in every single situation that you have before you, this is not a situation where you have to show necessarily that there were male domestic violence victims who were treated differently or other victims of crime who were treated differently. Well, counsel, how do you define the group that you contend was denied equal protection constitutionally? In this case, Your Honor, women and domestic violence victims. So those are two separate groups? That is correct, Your Honor. And this court has allowed claims from both of those groups to proceed. The domestic violence victims in the Navarro case and the Fajardo case, and women in the estate of Macias case and the Ballesteri case. So domestic violence victims could be male as well as female. That's true, although the overwhelming number of domestic violence victims are women, 85% or more. So even if you want to include men in that group, the fact that officers have a demonstrated hostility towards a group of people who are overwhelmingly female just because there are a few men who are also thrown in, that does not negate a circumstantial inference of discriminatory intent against women. But given the technicalities of where we are here in this particular constitutional claim that you're bringing, don't you have to establish that men were treated more favorably than women? Your Honor. Or at least offer significant evidence to establish that? We have offered evidence, Your Honor, the two instances anecdotally that we've shown. And also, as in the Flores v. Morgan Hill case, where the court didn't require evidence that non-LGBT students were also harassed or that that harassment was condoned, the court, this court, found that repeated instance of harassment of LGBT students in spite of an anti-harassment policy that was general was sufficient evidence to allow that case to go to the jury. Here we have evidence that, and an admission from the Fresno Police Department that we enforce, we follow law, we enforce crimes, we are an excellent agency, but yet we have evidence here that they were far from excellent. Thank you. Thank you both for your argument this morning. The case just argued of Motley v. Smith is now submitted.
judges: O'scannlain, McKeown, Bennet